## STATE v. JARVIS.

(Filed December 23, 1901.)

1. EVIDENCE—*Defect of Proof—Arrest of Judgment—Evidence—Waiver—Indictment—Exceptions and Objections.*

    A defect of proof is waived if not taken advantage of before verdict.

2. VARIANCE—*Indictment—Waiver—Arrest of Judgment—Exceptions and Objections—Forgery.*

    A variance between the *allegata* and *probata* is waived if not taken advantage of before verdict.

3. INDICTMENT—*Multifariousness—Forgery.*

    The allegation in an indictment of different phases of the same transaction does not make the indictment multifarious.

INDICTMENT against Joseph F. Jarvis, heard by Judge *Frederick Moore* and a jury, at June (Special) Term, 1901, of the Superior Court of BUNCOMBE County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Brown Shepherd,* for *Robert D. Gilmer, Attorney-General,* and *Frank Carter,* for the State.
*Thomas Settle,* for the defendant.

CLARK, J. The defendant was indicted for "uttering and publishing" a certain promissory note (set out in the indictment), knowing the same to be forged with intent to defraud, etc. There was no exception to the evidence or to the charge. It appears in the case that there was no evidence of "showing forth in evidence," and after verdict the defendant moved "in arrest of judgment," because those words are used in the bill which charges "did utter and publish and show forth in evi-

dence." The sole exception is to the refusal of the motion to arrest the judgment.

If it were essential to prove both the showing forth in evidence, as well as the uttering and publishing, still this is probably the first time that an appellant has gone on record as supposing that a variance or a defect of proof can be taken advantage of by a motion in arrest of judgment, which has till now always been restricted to errors on the face of the bill, which is in nowise deficient. 1 Bish. New Crim. Pro., sec. 1285. Besides, "an exception that there is no evidence is waived if not taken before verdict." *State v. Huggins,* 126 N. C., 1056, and a long line of cases cited in *State v. Harris,* 120 N. C., 578, and Clark's Code, at page 773. The bill is good at common law for "uttering and publishing." Arch. Crim. Pl.—Forms of Indictment for Uttering and Publishing. The addition of the words, "and show forth in evidence," did not vitiate the bill, but are mere surplusage if the uttering and publishing by other means was shown, as the jury find. Being only one of the methods of uttering and publishing, this was a mere statement of the transaction in different phases to meet the different aspects of the evidence, and was not the charging of different, distinct offenses, but the same offense by different means. Hence, the bill was not multifarious. *State v. Harris,* 106 N. C., at page 686, citing sundry decisions; 2 Bish. New Crim. Pro., sec. 434; 1 Wharton Crim. Law, sec. 727; *State v. Haney,* 19 N. C., at page 394.

No error.

DOUGLAS, J., dissenting. The defendant was tried upon an indictment, of which the following are the parts material to the question before us: "The jurors for the State, upon their oath present that Joseph F. Jarivs, late of the county of Buncombe, with force and arms, at and in said county, on or

about the first day of April, 1901, of his own head and imagination, unlawfully, wilfully, knowingly, wittingly, falsely and feloniously did utter and publish and show forth in evidence and attempt to employ as true, a certain promissory note  * * *  with intent to defraud, then and there well knowing that said promissory note under seal was false and forged, against the form of the statute," etc.

The defendant moved in arrest of judgment.

It is well settled that such a motion can be sustained only for error appearing on the face of the record; but I think that the error does so appear under the circumstances of this case. The case states that, "There was no evidence that the note had ever been used, or attempted to be used, as evidence in any judicial proceeding, except as the foundation of this indictment." This evidently was intended to present, and does present, the single question whether the indictment upon its face charges the offense for which the defendant was tried. We think it does not. The indictment confuses two sections of The Code, neither of which applies to the circumstances of this case. It was evidently intended to come under section 1029, and we think it would have been' sufficient under that section, if the defendant had been tried for any such offense, inasmuch as it uses the words, "show forth in evidence." It is true it also uses the words, "did utter and publish," which are not in this section, but used only in section 1031, as applying to bank notes and checks. These words, when applied to anything but counterfeit money, are held to be equivalent to the words, "show forth in evidence." *Britt's case,* 14 N. C., 122, is directly in point. There, the third and fourth counts charged the defendant with "uttering and publishing as true" a forged order for the delivery of goods and money. The Court says: "There seems to be no reason to doubt the correctness of any of the opinions pronounced in the Superior Court, except that which relates to the force of the words, 'ut-

ter and publish,' in the third and fourth counts.' They were held to be synonymous with 'show forth in evidence.' The former phraseology is that of the statutes relating to counterfeit money; the latter, of the acts for punishing forgery of private instruments. The different subjects may, of themselves, account for the difference of the terms used and seem to require a different meaning. But there is a decisive argument to be drawn from the Statute V Elizabeth, c. 14, from which ours is taken. The words of that statute are, 'shall pronounce, publish or show forth in evidence' (of which this last expression alone is retained by us) 'any such false or forged deed, etc. (except being attorney, lawyer or counsellor, he shall for his client plead, show forth or give in evidence such false or forged deed, etc., to the foregoing whereof he was not party or privy), and shall be thereof convicted,' etc. This plainly restrains the meaning of 'showing forth or giving in evidence' to a giving of the deed in evidence in a court of justice, and is altogether a different thing from the mere exhibition of it *in pais.* * * * A new trial must therefore be granted, although the case seems fully to justify a conviction," etc.

We have quoted so fully from the opinion of Chief Justice Ruffin because it seems to so completely cover every contention in the case at bar. It will be seen that it decides two points: (1) That the words, "utter and publish," when not used in relation to bank notes, are synonymous with "show forth in evidence;" and (2) that *neither* form of expression is sufficient to justify a conviction for a mere exhibition *in pais.* This case has been expressly approved upon this point in *State v. Stanton,* 23 N. C., 424.

It is contended that the words, "show forth in evidence," may be stricken out as surplusage, and the defendant convicted of the common law offense. This contention is contrary to the decision in Britt's case, where the words, "utter

and publish as true," were used by themselves and held insufficient. Moreover, words can never be stricken out as surplusage when striking them out would change the specific nature of the offense.

We must remember that the notice and protection to the defendant of a sufficient bill of indictment are not a matter of grace depending upon the will of the Court, or even that of the Legislature, but is a right expressly guaranteed by the Constitution. Our Declaration of Rights says in section 11: "In all criminal prosecutions, every man has the right to be informed of the accusation against him." Section 12 is as follows: "No person shall be put to answer any criminal charge, except as hereinafter allowed, but by indictment, presentment or impeachment."

If a bill of indictment fails to charge a crime, or charges it too indefinitely to put the defendant upon notice, or in the same count contains divers expressions which by subsequent reconstruction and elimination can be made to charge any one of several offenses, it utterly fails to fulfill its constitutional purpose, and becomes worthless in fact and in law.

The essentials of a good bill of indictment are so clearly stated by Chief Justice Taylor, in *State v. Justices of Lenoir,* 11 N. C., 194, that I can not do better than reproduce his language as follows: "There are some rules relative to indictments, which it is indispensable to observe, notwithstanding the relaxation in point of form which is introduced by the Act of 1811. The indictment must still contain a description of the crime and a statement of the facts by which it is formed, so as to identify the accusation; otherwise, the grand jury might find a bill for one offense and the defendant be put on his trial in chief for another. The defendant ought also to know what crime he is called upon to answer, and the jury should appear to be warranted in their conclusion of 'guilty or not guilty' upon the premises to be delivered to them. The

Court should also be enabled to see on the record such a specific crime that they may apply the punishment which the law prescribes; and the defendant should be protected by the conviction or acquittal, from any future prosecution. These are elementary rules which must be substantially observed." The Act of 1811 referred to by the Court, is now section 1183 of The Code.

In the case at bar the defendant was convicted under an indictment using words which this Court has repeatedly construed to mean, using or attempting to use as evidence in a judicial proceeding. It is stated in the record that there was no evidence tending to convict the defendant of such a crime; and it is evident from the entire proceedings that no such crime was contemplated when the indictment was drawn. The defendant is, therefore, entitled to a new trial. This does not mean that he shall go unwhipped of justice if guilty. It simply means that he is entitled to that protection which is thrown around every one charged with crime by the Constitution and the laws of the land. I do not intend in any respect to return to the useless technicalities of the common law, but we must preserve those personal guarantees which lie at the foundation of our system of jurisprudence.

It should not be difficult for the Solicitor to draw a bill of indictment that will fit the facts in this case, if those facts justify a conviction; and thus the ends of justice will be met without infringing upon the rights of the citizen.

New trial.